## Case No. 18,031.

### WOOLLY v. The PERUVIAN.

[3 Ware, 154;[1] 21 Law Rep. 153.]

District Court, D. Massachusetts. May Term, 1858.

LIEN ON VESSEL—LABORERS AND MATERIAL MEN—EXCAVATION OF TRENCH FOR LAUNCHING.

1. A trench excavated in front of the launching ways of a ship, for the purpose of deepening the water, does not make a part of the

[1] [Reported by George F. Emery, Esq.]

launching ways, within the meaning of the act of the legislature of Massachusetts of 1855 (chapter 231).

2. And though this was necessary for the launching of the vessel, yet as the trench remains to be used for other vessels, this was not, within the meaning of the act, labor performed in launching the vessel.

3. The general objects of the act are to give to material men, mechanics and laborers, a lien for all the materials and labor which go into the ship, constitute any part of it, and make up its entire cost.

[Cited in Young v. The Orpheus, 119 Mass. 184.]

4. For this the law constitutes the ship a debtor, and it is what she naturally owes, and it would require the most express and unequivocal language to extend the lien beyond this natural limit.

In admiralty.

S. J. Thomas, for libellant.
J. A. Andrew, for claimants.

WARE, District Judge. This is a libel in rem against a new ship, the Peruvian, for labor performed in launching her. The libellant alleges that "by virtue of a contract with the builders he performed labor in the launching of said ship to the amount of $150, according to the schedule annexed to the libel, and that this labor was indispensable to the launching of the ship;" and after deducting all credits, there remains due to him $129, for which he claims under the law of the state a lien on the ship.

The answer of the claimants, who are purchasers of the ship, without admitting the labor and services alleged in the libel, denies "that the same, if done, was of a kind or character entitling him to any lien or privilege on the ship." The actual performance of the labor was proved at the hearing, and the amount claimed was not contested, if any thing can be recovered in this suit. The ship was built at a yard in East Boston, and the water was so shoal in front of the yard where she lay, that it was necessary to excavate the earth so as to give a greater depth of water to prevent her grounding as she left the ways. The amount of excavation or dredging charged is fifty square yards at three dollars a yard. This lien is claimed under a statute of Massachusetts of 1855 (chapter 231). The material portion of the act is the first section: "Whenever by virtue of any contract, expressed or implied, with the owners of any ship or vessel, or with the agent, contractors or sub-contractors of such owner or any of them, or with any person having been employed to contract, repair or launch any ship or vessel, or to assist them,—money shall be due to any person for labor performed and materials furnished in the construction, launching or repairs of, or for constructing the launching ways for, or for provisions or other articles furnished for, or on account of any ship or vessel in this commonwealth,—such person shall have a lien on such ship or vessel, her tackle, apparel and fur-

niture, to secure the payment of such debt; which lien shall be preferred to all others thereon, except for mariners' wages, and shall continue until the debt be satisfied." The other parts of the act directing the measures to be taken to secure or perpetuate the lien, do not affect its nature or character.

Whether the lien can be maintained, depends on the construction of the act. The claim is set forth in the words of the law. It is for money due by virtue of a contract for labor performed in launching the ship, with an allegation that it was a service indispensable for that purpose. The statute gives the lien for labor performed in the launching, and for labor or materials in constructing the launching ways. On a strict criticism of the words of the law, this labor cannot, perhaps, with entire propriety, be said to be labor done in the launching of the vessel. It was rather a service performed preparatory to the launching, and whether it was a preparatory work of a kind that can justly be considered as contemplated by the legislature, seems to me to admit of a doubt. It is further argued by the libellants' counsel, that this dredging and excavation of the earth may be considered as labor performed on the launching ways. But it seems to me to be an unnatural and forced meaning put on the words, to consider an artificial channel made in front of the ways, where the ship is received into the water, as part of the ways themselves. The lien is given for labor and materials for the ways, apparently contemplating only the wooden frame-work or cradle in which the ship rests. There appears to me, therefore, to be some difficulty in maintaining that the service claimed in this libel was of such a character as fairly comes within the meaning of the law.

The statute is evidently drawn with care, and the manifest intention, I think, was to give to material-men and laborers, who have contributed by labor and materials to the construction of a ship, a lien for the price of every article which goes into and makes a part of her, and for every kind of labor that is performed upon or for her, until she passes into the element for which she is destined; in a word, for all, whether of labor or materials, which constitutes the proper cost of the ship. The statute creates a legal hypothecation of the thing, and makes the ship herself a debtor; and when the precautions are taken required by the other sections of the law, the lien adheres to her as a jus in re until the debt is paid, into whosesoever hands she may pass. But this, I think, is generally the whole intent of the law. The debt, for which this nexus is given, is the proper debt of the res, and is a property in the ship. To that extent the lien creditor is a quasi proprietor or owner. It is his own property, which he has never parted with, whether it is due for materials or labor. But it is his property in a qualified sense. The claimant or general owner has his rights also. He may pay the debt, or tender the pay, which will have the same legal effect, and then by operation of law, without any form of transfer, or the consent of the creditors, this special and qualified property passes to him in full and unqualified ownership. The lien does not necessarily or naturally extend to every thing furnished or done for or in reference to the ship, as for the price of tools supplied to mechanics and workmen, and used in doing the work. The legislature will not easily be supposed to have intended a lien for the price of these; because in that case the payment would operate as a transfer of these tools to the owner as appurtenant to the ship. But the ship has had only the use of them, and for this use has paid in the price of the labor. Such things, though in a loose sense they may be said to be furnished for the vessel, constitute no part of the ship, nor, like a boat or an anchor, are they a natural appurtenance to the ship. They will not, therefore, be supposed to be within the intention of the legislature, unless that intention is clearly expressed. But if such a purpose is unequivocally expressed, I do not see why courts are not bound to carry that intention into execution, whatever their own opinion may be of the utility of the law.

I should feel no difficulty in giving this interpretation as expressing the general intention of the legislature, that is, that the lien extended to all the materials and all the labor that made up the entire cost of the ship, and no farther, but for a single clause in the law. That gives a lien for labor and materials "for constructing the launching ways." Yet the launching ways constitute no part of the ship, nor are they in any way appurtenant to her after she is afloat. They are necessary, it is true, for the launching, and so, in some sense, may be said to be furnished for the ship and to make a part of her cost. But the same may be said of the tools of the workmen, and for a like reason the lien may be claimed as extending to them. The Kearsarge [Case No. 7,634]. But in each case, on the other hand, the ship has had only the temporary use of these things. The tools remain for further use, and the timbers, of which the launching ways are made, are preserved to be used for launching other vessels. The price of these does not go into the cost of the vessel. All that the ship naturally owes to the launching ways is for their temporary use and the labor of putting up the frame-work. This being for the special benefit of the ship, is a proper charge against it, and a proper subject of the lien. Yet, the words of the law are express, and in a statute drafted with such evident care, I find some difficulty in determining that the legislature did not mean what they have said.

But another question remains, whether this service comes within the descriptive words of the law in their fair and ordinary meaning. It is giving a forced and unnatural meaning to them, to call this trench a part of the launching ways. It is more easy and natural to consider the work as part of the labor of launch-

ing, and if the trench was made exclusively for this ship, if the whole use of it was consumed when this ship was launched, it might fairly be considered as part of the cost of the launching. But after it is used for this ship, the trench remains as a permanent improvement of the ship yard. If the claimant and owner pay for it, it does not become his as an appurtenance of the ship. It continues the property of the owner of the ship yard. It would require the most express and unequivocal language to extend the lien so as to include such work. This would be an infringement of the general principles of law and justice. "Quod vero contra rationem juris receptum est, non est producendum ad consequentias." Dig. 1, 3, 14.

Upon the whole, my opinion is that this trench formed in front of the ship-yard cannot be considered as part of the launching ways, nor can the making of it be considered as labor performed in the launching, within the meaning of the law.

The libel must be dismissed with costs.